1  Carl Wescott
2  PO Box 190875
   San Francisco, CA 94966
3  *in propria persona*
   +1 415 335 5000
4

5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7              SAN FRANCISCO DIVISON

8

9  Carl Alexander Wescott,          )   Case Number  CV 17 6271

10                  Plaintiff       )

11                                   )   COMPLAINT FOR BREACH OF CONTRACT;

12  ------------------ versus ------------------ )   BREACH OF FIDUCIARY DUTY;

13                                   )    THEFT OF TRADE SECRETS;

14  Eric Reisner and                 )   CONVERSION; CIVIL FRAUD;

15  Kerry Condon,                    )   PROMISSORY FRAUD AND CONCEALMENT;

16                  Defendants       )   AND OTHER CAUSES OF ACTION

17                                   )

18      And DOES 1 to 20,           )   ACCOUNTING REQUESTED

19                  Defendants       )   JURY TRIAL REQUESTED

20

21      Plaintiff Carl Wescott, proceeding pro se, complains of Defendant Eric Reisner and in

22  support of his complaint, the Plaintiff states as follows:

23

24

25  **PARTIES**

26      1.  The Plaintiff is an individual who resided in San Francisco, California for many years.

27      2.  The first Defendant, Eric Reisner ("Reisner") is an individual living in Old Lyme, CT.

28

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,** 1
**CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT,**
**BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

3. The second Defendant, Kerry Condon, is an individual working in Cambridge, Massachusettts.  Kerry Condon and Eric Reisner were married during the initial years of the parties' malfeasance, and may still be married.

4. All acts complained of herein were undertaken by Eric Reisner for the benefit of the marital community with Kerry Condon. Ms. Condon, a sophisticated and experienced business executive, conspired with her husband to commit the breaches of trust, acts of misappropriation, and fraud that are at the core of the complaint.

**JURISDICTION**

5. This Court has jurisdiction pursuant to 28 USC 1332, there being diversity of citizenship and the amount in controversy exceeding $75,000 exclusive of fees and costs.

**VENUE**

6. Venue is proper in this Court because the parties' initial meetings and the signing of the contract was in San Francisco, California.  Further, agreement of the parties called for any dispute to be resolved in the City of San Francisco and State of California.

7. This case is about a contract to purchase and develop property in Nicaragua. The Plaintiff trusted Reisner with substantial funds including a property purchase with those funds and legal control/power of attorney over that property. Reisner, with the collusion and encouragement of Ms. Condon, misused the latter to fraudulently sell valuable real

COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD

property at fire sale prices and convert the funds. Reisner left the country and absconded to Singapore with the proceeds of his theft and has only been recently located by the Plaintiff.

A. The Parties' Contract

8. In 2008 the Plaintiff was a successful international real estate developer having recently sold out an entire residential development in Vilcabamba, Ecuador. The Plaintiff realized that Central and South American venues were increasingly attractive to American expatriates because of the relatively low cost of living and the climate and scenic beauty. The Plaintiff's business model was to identify promising parcels and do the preliminary work of development, hiring architects, making initial infrastructural improvements, obtaining permits, and marketing the development concept. With the permits the value of properly obtained land could go up 2 to 10+ times. The Plaintiff could then borrow against the improved value of the land to fund infrastructure improvements and sell lots (and sometimes houses, too) through marketing channels at a substantial profit. The Plaintiff was also experimenting with acquiring distressed properties, or distressed debt and mortgages secured by properties, as another means of acquiring properties at a discount and/or generating high returns and cash flow.

9. The Plaintiff's plan was to ramp up to multiple projects which he would identify, using his expertise, building on his track record of success. If the Plaintiff was to obtain the scale he required, he would need trustworthy agents and partners on the ground at each location.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

10. The Plaintiff met Reisner in 2008 through a former business colleague. Reisner resided in Washington State at the time and had a modest track record of success buying, improving, renting and reselling residential properties. Reisner immediately understood, upon meeting the Plaintiff that the Plaintiff's business model achieved a level of scale and profitability he could never attain as a local property owner, and further, that the easy loans he was using to acquire real estate would not be available much longer.

11. Reisner schemed from the first to obtain access to lucrative properties that the Plaintiff could identify because of his valuation expertise and superior knowledge of the Latin American marketplace and that the Plaintiff could obtain because of his brand and relationships.

12. Reisner falsely represented that he was willing to work with the Plaintiff as a kind of junior partner and induced the Plaintiff to enter into a January 2009 Partnership agreement ("the Partnership Agreement"). A true and correct copy of the Partnership Agreement is attached hereto as Exhibit "A". This was part of a scheme on the part of Reisner to defraud the Plaintiff out of money and valuable real property.

13. Prior to the Partnership agreement, the Plaintiff had invested over $300,000 in Nicaragua, primarily to purchase a large enough parcel ("the Property") in Diriomo, Nicaragua (near Grenada) for a residential subdivision.

14. Pursuant to the Partnership Agreement, the Plaintiff agreed to:

   (a) Pay moving expenses of Reisner;
   (b) Lend Reisner $5,000 per month so that Reisner could pay living expenses in Nicaragua;
   (c) Provide Reisner 10% of future profits after all invested costs were paid back. Assuming that the 10% profits exceeded the advances to Reisner, Reisner

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

would then be paid the difference.  Or, if the profits did not exceed the loaned advances to Reisner, Reisner would then pay back the difference.

15. The parties agreed that Reisner and Condo would move to Nicaragua, and that they would develop multiple more projects in Nicaragua after the first project threw off profits.

16. Reisner informed Plaintiff that he had many finance contacts and could obtain the loan on the property for infrastructure after permits were obtained.

B. The Parties' Performance (and Lack Thereof)

17. Once in Nicaragua, Reisner immediately began spending lots of money and time looking for other projects to develop (despite the agreement that that would come later). He did not work much on getting the permits.  Plaintiff hired Carlos Gutierrez Solis in Nicaragua to assist in getting the permits and Solis did indeed do the work of obtaining the permits.

18. Reisner stated that it was too difficult to make progress needing Plaintiff's signature on major items.  He asked for a way he could just sign things himself.  Plaintiff did not realize Reisner was setting him up for a con and Reisner's and Condon's ensuing theft. Plaintiff and Reisner agreed that they would set up a Nicaraguan corporate structure with Reisner controlling it locally, but they also agreed that Reisner would email Plaintiff for written permission for each signature he would make locally (providing the relevant documents or contracts).  That way Reisner's stated issue could be solved while Plaintiff could still control his investment and the property.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,** 5
**CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT,**
**BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

19. Rather than make the Diriomo project a success, though, Reisner charged ahead on other projects, investing significant time and money. For example, he agreed to pay Paul Tiffer, a Nicaragua attorney, $5,000 for legal work on a seaside property in Montelimar. Upon information and belief, Reisner paid Tiffer the $5,000 partially as a bribe or to look the other way with legal documents in the future. Reisner and Tiffer both knew that Plaintiff had funded over $300,000 in prior Nicaragua expenses, including 100% of the purchase of the Property, and that Plaintiff would get 90% of the profits. In discovery, we'll find out if Tiffer helped Reisner with legal work in selling the Property in the later theft, and if so, the theory of Tiffer's culpability shall also be confirmed.

20. Separately, Reisner started submitting invoices to Plaintiff wanting Plaintiff to pay many expenses that were clearly Reisner's personal expenses (e.g. cell phone minutes, residency, meals). Reisner also would not provide receipts for the expenses.

21. Based on Reisner not doing what was agreed, not doing what the partnership agreement stated (that they would make decisions together), his wasteful spending, his refusal to provide receipts and invoices, and his lack of progress in the project Plaintiff began to realize he had made a mistake in agreeing to partner with Reisner. Those instincts were later proven even more correct when Plaintiff discovered Reisner's and Condon's theft.

22. The permits were obtained in April 2009. However, Reisner did not make any progress in getting the loan on the subject property. As a result of the September 2008 credit crunch, Plaintiff had begun to have cash flow issues. As a result of Reisner's failure to obtain financing on the Property (a mortgage), compounded by the Plaintiff's cash flow issues, Plaintiff was having difficulty paying even the legitimate Reisner expenses

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,** 6
**CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT,**
**BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

($5,000 per month being loaned to him for his living expenses), much less the unapproved and fraudulent ones.

23. Reisner called the Plaintiff when Plaintiff's wires and deposits were late, and began screaming at him and making threats against Plaintiff's family and children. Phone records will show when this was, but from memory, it was approximately June 2009. Plaintiff hung up on Reisner while Reisner was still screaming and threatening to hurt Plaintiff's children.

24. Reisner and Condon left Nicaragua in approximately January 2010.

25. Later in 2010, Reisner sold the Property at a firesale price, a fraction of its value, and absconded with the purloined funds, to Singapore.

26. Reisner and Condon were in Singapore for years (perhaps thinking they were safe from criminal prosecution by staying out of Nicaragua).

27. The Plaintiff had sustained business reverses as a result of the real estate crash, further compounded by Resiner and Condon's scheme to defraud him and steal funds from his property. The Plaintiff then went through a contentious divorce.

28. The Plaintiff has experienced a protracted interlude of homelessness from which he has still not recovered. The Plaintiff is, to the present day, unhoused and on public assistance (EBT/Calresh, also known colloquially as food stamps).

29. Plaintiff visited Nicaragua in 2016 to pick up the pieces, as this Property, despite debts owed by the Plaintiff in Nicaragua, represented his best path out of his current situation. His real estate broker informed him that the 42 lots on the subject Property were now worth, even without infrastructure, approximately $30,000 apiece. However, Plaintiff

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

also learned then that Reisner had used his apparent legal authority back in 2010 to sell the Property at a fire sale price.

30. Plaintiff believes the discounted price was both low to help Reisner steal funds as quickly as possible, but also an inducement to avoid a level of diligence and scrutiny by the buyer that might have led to the discovery of Reisner's fraud.

31. The Plaintiff then searched for Reisner. Neither he nor the real estate broker, who also attempted to contact him, could locate him.

32. More recently, in October 2017, Plaintiff discovered that Reiser was now living and working in Connecticut. Plaintiff called him, but Reisner did not take his call. Plaintiff left voicemail, but Reisner has not returned his phone call, as of this writing, almost a week later.

33. Plaintiff had hoped to work out a fair solution with Reisner and at least get his money on the Property back with interest (and also figure out a fair solution and accounting on monies invested), but since Reisner refuses to speak with Plaintiff, that clearly will not happen.

34. Plaintiff learned last week that Reisner has been using Plaintiff's trade secrets in the acquisition of distressed debt and NPNs (Non-Performing Notes), as part of his misappropriation of trade secrets.

35. Plaintiff emailed Reisner that if Reisner did not contact him by Monday morning, October 29th, that he would contact the FBI, among other actions, to report Reisner and Condon's crimes. Plaintiff is not an expert in criminal law, but his layperson understanding is that Condon and Reisner's criminal conspiracy includes conversion and misappropriation of trade secrets.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

36. At 9:51 am on Monday October 29th, 2017, Plaintiff reported the crimes to the FBI. He spoke to an agent who advised him to gather all possible evidence, some of which will be obtained in discovery in this civil case.

## Count I  Promissory Fraud

37. The Plaintiff realleges paragraphs 1-36 as if fully set out herein.

38. To induce the Plaintiff to enter into the Partnership Agreement, Reisner made the following representations:

      (a) He intended to perform services on the ground in Nicaragua under Plaintiff's overall direction;
      (b) He intended to provide the Plaintiff with accurate and timely reports of his activity;
      (c) He intended to remain a faithful fiduciary to the parties' Partnership and to exercise his discretion only in the interest of the Partnership. (Collectively, "Reisner's Promises")

39. At the time Reisner made Reisner's Promises he had no intent to honor them. In fact, Reisner made Reisner's Promises as part of a scheme to induce the Plaintiff to enter into the Partnership Agreement for the purpose of exploiting the Plaintiff's expertise, brand and relationship and for the purpose of converting any assets of the Partnership that would come under his control.

40. Reisner intended that the Plaintiff rely on Reisner's Promises and the Plaintiff did in fact reasonably rely on Reisner's Promises.

41. The Plaintiff has been directly and proximately damaged through his reliance on Reisner's Promises by losing the amounts he loaned to Reisner as well as the (actual, full) value of the Property wrongfully sold by Reisner.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

42. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sale of this development Property and thus been further damaged.

## Count II  Civil Fraud & Concealment

43. The Plaintiff realleges paragraphs 1-36 as if fully set out herein.

44. Under the Partnership Agreement and as a fiduciary, Reisner had a duty to disclose all material information concerning his exercise of discretion as a Partner and an agent under the Plaintiff's POA.

45. Reisner omitted to disclose the information that he had sold the Property. Reisner compounded his omission by absconding from the jurisdiction effectively concealing his defalcation.

46. Reisner's omission was material in that had he disclosed the sale of the Property, the Plaintiff could have timely intervened and stopped or reversed the sale.

47. Reisner intended that the Plaintiff rely on his material omission that he had sold the Property and the Plaintiff did in fact reasonably rely.

48. The Plaintiff has been damaged by his reliance on Reisner's omission by losing the value of the Property wrongfully sold by Reisner.  Nota bene that the value is an order of magnitude larger than the fire-sold price.

49. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sale of this development Property.

## Count III Conspiracy to Commit Fraud – Condon

50. Plaintiff realleges paragraphs 1-36 as if fully set out herein.

51. At all relevant times, Kerry Condon was aware that Reisner intended to omit and conceal the fact that he had misused his apparent legal authority to sell the Property and convert the Funds.

52. Condon agreed with Reisner's scheme to commit all such acts of fraud and concealment, intended the act be committed, and encouraged and assisted Reisner in committing the acts of misappropriation.

53. The Plaintiff has been damaged by Condon's conspiracy with Reisner to defraud him by means of Reisner's omission by losing the (actual full) value of the Property wrongfully (fire-)sold by Reisner.

54. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sale of this Property.

## Count IV Breach of Fiduciary Duty – Reisner

55. Plaintiff realleges paragraphs 1-36 as if fully set out herein.

56. Pursuant to the Partnership Agreement, Reisner was a partner of the Plaintiff and owed him a fiduciary duty to deal fairly and honestly with Plaintiff and to not elevate his personal interests above the interests of the Partnership.

57. Pursuant to the legal authority that Plaintiff granted Reisner, Reisner owed distinct fiduciary duties to the Plaintiff to use the authority only in the interest of the

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

Partnership and only as agreed in writing (email) by Plaintiff and not for his own

interests at the expense of the Partnership.

58. Reisner breached his fiduciary duty under the POA and under the Partnership

Agreement by misusing his POA to convert the Property.

59. The Plaintiff has been damaged by Reisner's fiduciary breaches by loaning monies to

Reisner (not repaid) and losing the (actual, full) value of the Property wrongfully sold

by Reisner (with Reisner and Condon pocketing the stolen funds).

60. Further, the Plaintiff has also lost any further profits that could have been made over

the years by reinvesting funds from the sale of this Property and thus been further

damaged.

## Count V Aiding & Abetting Fiduciary Breach – Condon

61. Plaintiff realleges paragraphs 1-36 as if fully set out herein.

62. Defendant Condon was aware that Reisner was planning to breach his fiduciary duties

to the Plaintiff.

63. Condon gave substantial assistance to Reisner by encouraging him, inducing him, and

helping him plan his breach of fiduciary duty.

64. The Plaintiff has been damaged by Condon's acts by loaning monies to Reisner and

Condon that are unpaid even now, seven years later, and also losing the value of the

Property wrongfully sold by Reisner.

65. The Plaintiff has also lost any further profits that could have been made over the years

by reinvesting funds from the sale of this Property and thus been further damaged.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,[12]
CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT,
BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD

## Count VI. Misappropriation of Trade Secrets CCP 3426 et seq

66. The Plaintiff realleges paragraphs 1-36 as if fully set out herein.

67. Pursuant to CCP 3426.1 (b) (ii) Reisner acquired confidential information belonging to Plaintiff under circumstances (e.g. the partnership, a fiduciary relation) giving rise to a duty to maintain its secrecy or limit its use.

68. Specifically, the Plaintiff's business model was novel and proprietary in at least the following respects:

> (a) The Plaintiff's methods for identification, valuation, and acquisition of Latin American properties;
> (b) The Plaintiff's precise sequence of preliminary steps to develop properties that (i) increased their value for further development but (ii) limited the Plaintiff's initial investment;
> (c) The Plaintiff's utilization of his credibility and branding to persuade some sellers to finance his development activities
> (d) Aquisition of distressed properties and distressed debt, including NPNs (Collectively "Plaintiff's Business Methods").

69. The Plaintiff's Business Methods were valuable and concrete enough to be protectable under California law. The Plaintiff had, in effect, created an intermediary position between pure land speculation and development that differed from the function any other broker, developer, or investor served. The Plaintiff had identified those preliminary steps of property improvement that delivered the most appreciation in value for the least investment. Further, the Plaintiff's exploration of concepts of purchasing distressed properties and distressed notes and mortgages to acquire properties or cash flow also are deemed to provide exponential returns on investment when properly applied.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,**[13]
**CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALMENT,**
**BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

70. The Plaintiff took all reasonable precautions to preserve the confidentiality of Plaintiff's Business Methods. The Plaintiff only disclosed Plaintiff's Business Methods in a contractual context such as the Partnership Agreement that created a fiduciary relation.

71. Reisner misappropriated the Plaintiff's Business Methods by inducing disclosure from the Plaintiff in the context of a fiduciary and contractual relation and then misappropriating the value by selling the Property for a fraction of its value in a fire sale calculated to maximize Reisner's return while minimizing the buyer's diligence. Plaintiff is informed and believes that Reisner has continued to misappropriate Plaintiff's Business Methods by applying them to a series of transactions in the United States and possibly elsewhere.  Reisner has derived profits from those transactions.

72. The Plaintiff has been damaged by Reisner's acts of misappropriation by loss of the value of the Property wrongfully sold by Reisner and by the loss of his rightful profits (or reasonable royalty fee) for the misapplication of Plaintiff's Business Method to later transactions by Reisner.


**Count VII Civil Conspiracy to Misappropriate Trade Secrets - Condon**


The Plaintiff realleges paragraphs 1-36 and 66-72 as if fully set out herein.

73. At all relevant times, Kerry Condon was aware that Reisner intended to misappropriate the Plaintiff's trade secrets including Plaintiff's Business Method.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

74. Condon agreed with Reisner's scheme to misappropriate Plaintiff's Business Method, intended the acts be committed, and encouraged and assisted Reisner in committing the acts of misappropriation.

75. The Plaintiff has been damaged by Condon's conspiracy with Reisner's to commit his acts of misappropriation by loss of the value of the Property wrongfully sold by Reisner and by the loss of his rightful profits (or reasonable royalty fee) for the misapplication of Plaintiff's Business Method to later transactions by Reisner.

## Count VIII  Breach of Contract - Reisner

76. Plaintiff realleges paragraphs 1-36 as if fully set out herein.

77. By his acts of nonfeasance, e.g. non-performance of his duties and misfeasance, e.g. conversion of the Property, Reisner materially breached the parties' Partnership Agreement.

78. Plaintiff has been damaged by Reisner's breach by the loss of amounts loaned to Reisner and the loss of the value of the Property wrongfully sold by Reisner.

79. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sale of this development Property and thus been further damaged.

**Count IX Interference with Contract – Condon**

80. Plaintiff realleges paragraphs 1-36 as if fully set out herein.

81. At all relevant times, Kerry Condon was aware of Reisner's contractual obligations to Plaintiff.

82. Despite being aware of Plaintiff's contractual rights to Reisner's performance, Condon encouraged, abetted, assisted and induced Reisner's material breaches of the parties' Partnership Agreement.

83. Plaintiff has been damaged by Condon's interference with his contractual rights by the loss of amounts loaned to Reisner and the marital community and the loss of the value of the Property wrongfully sold by Reisner.

**Count X Conversion of Funds – Reisner**

84. Plaintiff realleges paragraphs 1-36 as if fully set out herein.

85. The funds that Reisner received for the Property rightfully belonged to the Partnership. Those funds would go first to Plaintiff for his expenses in purchasing the property to begin with. After all expenses were paid up, another 90% of the remaining funds would have gone to Plaintiff.

86. Reisner has improperly embezzled and converted those funds asserting control thereof at the expense of Plaintiff, his Partner.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD

87. Worse yet, by fire-selling the property for a tiny fraction of its value in haste to commit the crime and survive buyer and possibly attorney and other scrutiny, Reisner deprived Plaintiff of the great majority of funds he would have received.

**Count XI Accounting**

88. Plaintiff reallges paragraphs 1-36 as if fully set out herein.

89. Plaintiff, as partner and principal, is entitled to an accounting of all funds misspent by Reisner, including living expenses, loans made, and sums converted in relation to the wrongful sale of the Property.

90. Plaintiff is also entitled to an accounting of all profits obtained by Reisner as a result of his misappropriation of Plaintiff's Business Methods and/or other trade secrets of Plaintiff in transactions that post-date the parties' partnership.

91. Further, given that Reisner fire-sold the property at a fraction of its value in haste to leave the country and also to induce a buyer not to scrutinize the transaction too carefully, Plaintiff hereby requests that the Accounting take in to account the actual seven (7) digit value of the property, which now consists of 42 individual residential lots, as determined by one or more expert, licensed appraisers.

92. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sale of this development Property and thus been further damaged, and the Accounting should do its best to calculate those reasonable amounts.

1

2    WHEREFORE, Plaintiff prays that this Court enter Judgement:

3

4

5        (a) As to Count I for damages caused by Reisner's acts of fraudulent inducement and

6               promissory fraud, in an amount to be determined at trial, plus the imposition of punitive

7               damages in an amount sufficient to punish and deter similar wrongful acts by Reisner in

8               the future;

9

10       (b) As to Count II for Civil Fraud, for damages caused by Reisner's acts of fraudulent

11              misrepresentation and omission in an amount to be determined at trial, plus the

12              imposition of punitive damages in an amount sufficient to punish and deter similar

13              wrongful acts by Reisner in the future;

14

15       (c) As to Count III for conspiracy to commit Civil Fraud, for damages caused by Condon's

16              acts of conspiracy, encouragement, assistance and inducement of Reisner's fraudulent

17              acts in an amount to be determined at trial, plus the imposition of punitive damages in an

18              amount sufficient to punish and deter similar wrongful acts by Condon in the future.

19       (d) As to Count IV, for damages caused by Reisner's acts of fiduciary breach in an amount to

20              be determined at trial, plus the imposition of punitive damages in an amount sufficient to

21

22              punish and deter similar wrongful acts by Reisner in the future;

23       (e) As to Count V, for damages caused by Condon's acts of aiding and abetting Reisner's

24              fiduciary breach in an amount to be determined and trial plus the imposition of punitive

25              damages in an amount sufficient to punish and deter similar wrongful acts by Condon in

26

27              the future.

28

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,[18] CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**

(f) As to Count VI, for damages caused by Reisner's acts of misappropriation, including lost profits and/or a reasonable royalty rate for all transactions in which Plaintiff's secrets were misappropriated in an amount to be proved at trial plus double damages for wilfulness pursuant to 3426.3;

(g) As to Count VII for damages caused by Condon's conspiracy to misappropriate Plaitniff's trade secrets, including lost profits and/or a reasonable royalty rate for all transactions in which Plaintiff's secrets were misappropriated in an amount to be proved at trial plus double damages for wilfulness pursuant to 3426.3;

(h) As to Count VIII for damages caused by Reisner's breach of contract to be proved at trial;

(i)  As to Count IX, for damages caused by Condon's acts of interference with Plaintiff's contractual rights in an amount to be proved at trial;

(j) As to Count X for restitution of all funds converted plus the imposition of punitive damages in an amount sufficient to punish and deter similar wrongdoing in the future;

(k) As to Count XI for an accounting to determine the exact amounts misappropriated and converted by Reisner, as well as all Reisner's profits wrongfully derived from misappropriation of Plaintiff's Business Method and other trade secrets of Plaintiff;

(l) And for such other and further relief as this Court deems just.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD

19

1   WHEREFORE, Plaintiff further prays that once the Defendants' theft and conversion has been

2   definitively proven, that this Court also refer this case to the appropriate District Attorney for

3   indictment and criminal prosecution.

4

5

6

7

8          Respectfully submitted,

9

10

11   _____

12          Carl A. Wescott, pro se

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
          **COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS,** 20
            **CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALMENT,**
          **BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD**