Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

FILED
MAY - 3 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | |
|---|---|
| Carl A. Wescott, Plaintiff | ) Case No. 17-cv-06271-EMC |
| -------------------- versus -------------------- | ) **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT KELLY CONDON'S MOTION TO DISMISS FOR LACK OF JURISDICTION** |
| Eric Reisner and Kerry Condon, Defendants | ) |
| And DOES 1 to 20, Defendants | ) Currently scheduled hearing: May 17th, 1:30 pm |

Plaintiff Carl A. Wescott, proceeding *pro se*, responds to and opposes Defendant Kelly Condon's Motion to Dismiss with the following concise Memorandum of Points & Authorities. As a threshold matter, the Plaintiff apologizes for his late filing. He was not aware of this motion and hearing until late on Monday April 30th, and did not receive the moving papers until late afternoon on Tuesday May 1st. The Plaintiff is grateful to Ms. Condon's attorneys who have been extremely responsive, professional and courteous. The Plaintiff is also not able to attend the hearing as scheduled on May 17th and is working with Ms. Conlon's attorneys to stipulate to push back the hearing a week or more (subject, of course, to Court approval) so that both parties may attend.

1. Introduction

This is a case about the calculated breach of a contract formed in California and containing a California forum selection clause. The misconduct of the Defendants went beyond mere breach and amounted to outright fraud and to the misappropriation of valuable trade secrets and the theft of real property (20 hectares, or approximately 50 acres of land).

Defendants in this case, Eric Reisner ("Resiner") and Kelly Condon ("Condon") were husband and wife at the time of the relevant events (Complaint par. 4). Moreover, Condon was a sophisticated business executive who actively conspired with her husband to perform the acts complained of. (Complaint, par. 5).

The Plaintiff initially met with Reisner in San Francisco and the parties signed a contract with a San Francisco forum selection clause. (Complaint, par. 7). The Plaintiff admits that the contract in question was referenced but omitted from his Complaint and apologizes to the Court and the Defendants as he continues to search for the correct final and signed contract of the parties. The Plaintiff's failure to attach a copy of the contract (before identifying the final version) and/or his failure to provide the verbatim language is not fatal to this claim.

> Accordingly, plaintiff's failure either to attach or to set out verbatim the terms of the contract was not fatal to his breach of contract cause of action. *Miles v. Deutsche Bank National Trust Co.*, (2013) 221 Cal.App. 4th 49.

The Plaintiff was a successful international real estate investor with a valuable and confidential business model. (Complaint, par. 9). Essentially, the Plaintiff was expert in identifying and valuing properties in attractive locales enjoying a comparatively low cost of living. (Complaint, par. 9). But the Plaintiff's business model went far beyond such preliminary steps. He found that by occupying a middle niche between speculator and developer he could maximize his return. He would not only buy the properties but obtain permits and collaboratively

create plans and specifications. He would then do preliminary marketing. This meant that a developer or other partners could come in and execute with greatly reduced risk. (Complaint, par. 9.)

The plan was for Reisner to act as the Plaintiff's agent on the ground while the Plaintiff ramped up multiple projects. (Complaint par. 10). Reisner had significant real estate and financing expertise as well, but limited to buying, renting, sometimes renovating, and "flipping" properties in Washington State. Reisner had no experience developing entire residential subdivisions. The Plaintiff and Reisner were introduced by a colleague in 2008 and Reisner quickly grasped the value of the Plaintiff's business model. (Complaint, par. 11).

The Plaintiff now believes that Reisner schemed from the first to exploit his principal's methods and opportunities and to pocket the profits. (Complaint, par. 12). Reisner and Condon relocated to Nicaragua and Plaintiff agreed to reimburse substantial moving expenses as well as provide an advance against future profits (which Plaintiff would get 90% of, and Reisner 10%).

Reisner neglected the work of obtaining permits. (Complaint, par. 18) and essentially spent his time trying to apply the Plaintiff's proprietary methods to projects that Reisner and Condon would solely control. (Complaint pars. 18-20). Reisner also induced the Plaintiff to set up a Nicaragua corporate entity such that it gave Reisner practical signatory authority. (Complaint par. 19).

Reisner began to bill the Plaintiff for personal expenses. (Complaint, par. 21). Reisner was failing to perform. The Plaintiff managed to obtain needed permits (through another agent) but Reisner failed to obtain a loan on the property. (Complaint, par. 23). Reisner's failure and neglect led to cash flow strain for the Plaintiff with the result that some payments to Reisner came late. The Plaintiff fully admits that despite his best efforts, partially as a result of Reisner's

failures, but also partially due to other impacts from the September 2008 credit crunch, his payments (e.g. the advances on profits) were late.

However, this did not give Reisner and Condon the right to steal (legal term: convert) a property worth $500,000+, nor threaten the Plaintiff's family. Reisner's response was to threaten to harm the Plaintiff's children. (Complaint, par. 25). Reisner and Condon then sold the property for a fraction of its market value without Plaintiff's permission and absconded with the proceeds to Singapore, where they remained for years. (Complaint, pars. 26-27). The Plaintiff subsequently learned that Reisner was utilizing his proprietary business methods that had been disclosed in confidence to Reisner. (Complaint, par. 28).

The Plaintiff is sorry that Reisner and Condon are no longer married but notes that they made an effective team in defrauding and fleecing him. In Counts III, V, VII and IX the Plaintiff specifically alleges that: (a) Condon actively conspired with Reisner in his scheme to defraud the Plaintiff; (b) Condon gave substantial and knowing assistance to Reisner's fiduciary breaches; (c) Condon conspired with Reisner to misappropriate the Plaintiff's trade secrets and; (d) Condon intentionally interfered with the Plaintiff's contractual rights.

In summary we are talking about a husband and wife moving to Nicaragua, plundering the Plaintiff's assets, and then absconding together to Singapore. The Complaint at par. 5 sets out that Condon was an experienced and sophisticated financial executive. She was better educated and more intelligent than Reisner. She played the role of Lady Macbeth in this drama.

2. The Defendant Entirely Ignores Settled Law Allowing Non-parties to be Bound by Forum Selection Clauses

Defendant Condon would have us believe that she is a stranger to this contract; a stranger to this State; and hence not subject to the jurisdiction of the Court. Her Memorandum, while not inaccurate as to the general points made, ignores the elephant in the room: **1.) Forum selection clauses are presumptively valid in the 9th Circuit** and 2.) a non-party, non-signatory to a contract with a forum selection clause may be properly bound by that forum selection clause if that party is "closely related" to the dispute such that it is foreseeable that the party will be bound. *Manetti-Farrow Inc. v. Gucci AM, Inc.*, 858 F.2nd 509 (9th Cir. 1988). Accord *Estep, et al. v. Yung, et al.*, Case No. 2:14-cv-02418 (E.D.Cal. Jan. 13, 2015). (9th Circuit case-law allows non-parties to be held to forum selection clauses if the conduct of the non-parties is closely related to the contractual relationship.) *Taag Linhaus Areas Angola v. Transamerica Airlines, Inc.* 915 F.2nd 1351 (9th Cir. 1990) (Third-party beneficiary to contract bound by forum selection clause). The Defendant does not favor us with her analysis of the doctrine, ignoring it altogether and suggesting – at least by implication – that a nonparty may never be so bound. This is a glaring omission in an otherwise diligently researched document.

Here Defendant Condon relocated to Nicaragua with her husband, Defendant Reisner. She was the more sophisticated party. As husband and wife the Defendants lived in the same household, effectively operated a home based business, and benefitted from monies sent by Plaintiff. Had Condon and Reisner executed as promised and as the Plaintiff hoped, Condon and Reisner would have received 10% profits on the project. As husband and wife they sold the Plaintiff's assets at fire sale prices and absconded to Singapore together, after Condon repeatedly urged her husband to do so. (See Plaintiff's Sworn Declaration Exhibit "A"). The Complaint

alleges that in every way Condon aided, abetted, encouraged and supported Reisner's contractual and fiduciary breaches. The conduct of which Condon is accused – Civil Conspiracy and Interference with Contract – is clearly closely related to the parties' contract.

Under the law of the 9th Circuit, Condon's conduct was so closely related to the contract as to make it both foreseeable and fair for her to be bound by the contractual forum selection clause – itself facially valid.

The Plaintiff has executed a Sworn Declaration (attached hereto as Exhibit "B") that recounts the details of the Plaintiff's interaction with Defendants. In that respect it was clear that Condon was the dominant party. Condon clearly regarded the contract as impacting her and involving her. She regarded herself as a party to the contract. It is only fair and reasonable that she is subject to the contract's forum selection clause.

3. Alternatively, Jurisdiction is Proper under the Effects Test

The 9th Circuit treats jurisdiction for contract and tort cases differently. *Yahoo v. La Ligue Contra Le Racisme Et L'Antisemitisme*, 433 F.3rd 1199, 1206 (9th Cir. 2006). In the tort context, the 9th Circuit applies the effects test: did the Defendant purposefully direct her activities at the forum state (in this case, California) regardless of whether the actions themselves occurred within the state. The test may be described as follows: (1) the Defendant committed an intentional act, (2) expressly aimed at the forum state and, (3) caused harm, the brunt of which was foreseeably suffered in the forum state. *Harris Rutsky & Co. Ins. Serv. Inc. v. Bell & Clements Ltd.*, 328 F.3rd 1122, 1131 (9th Cir. 2003).

The Complaint alleges misappropriation of trade secrets held by a California resident (Complaint, pars. 11-12); acts undertaken for the purpose of gaining the signatory authority of a

California resident to facilitate the embezzlement of funds (Complaint, par. 19); acts undertaken for the purpose of obtaining payments from a California resident and; extortionate threats directed at the California domiciled children of a California resident (Complaint, par. 25). Clearly the *effect* of such tortious conduct would be experienced in California and reflects activity purposefully directed against a resident in the forum state.

Clearly, the brunt of the injuries naturally, probably and foreseeably flowing from these acts would be felt in California. The Complaint alleges that the Plaintiff was attempting to ramp up an international business headquartered in California (Complaint, par. 12) and the Defendants not only sabotaged that California business, but misappropriated valuable intangibles (including trade secrets) and extorted and defrauded a California resident. Since the Defendants obtained money by means of threats directed at the Plaintiff's children, he may amend to state a civil cause of action for Extortion under California law. *Stenehjem v. Sareen*, (2014) 226 Cal.App. 4th 1405.

Per the Plaintiff's Sworn Declaration, Condon was the driving force behind the Defendants' extortionate collection efforts. She predictably and foreseeably inflicted harm in California and it does not offend due process to have her defend her conduct in California.

4. In the Alternative, the Plaintiff should be Granted Leave to Take Limited Discovery Directed at Jurisdiction over Condon

Limited jurisdictional discovery is appropriate where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary. *Buttcher's Local Union No. 498 v. SDC Inv. Inc.*, 788 F.2d 535, 540 (9th Cir, 1986). Once the Plaintiff makes a colorable showing of jurisdiction, the Plaintiff is allowed to purse discovery for the purpose of determining whether jurisdiction is reasonable.

The Plaintiff's Sworn Declaration indicates that Condon regarded the contract at issue as hers as well as her husband's and was the driving force behind her husband's flight to Singapore to pursue her professional opportunity. The Plaintiff should be given the opportunity, in the alternative, to develop these facts and demonstrate that Condon was the driving force in her husband's fraud and breach of fiduciary duty and contract.

5. Conclusion

Ms. Kelly Condon (just like Lady Macbeth) is a co-conspirator in this case. Jurisdiction is justified because Defendant Condon was inextricably connected to the contract at issue – which she referenced as "our contract". Condon continuously complained that "we" would not be paid. She treated and regarded the contract as being applicable to the family unit – after moving to Nicaragua in support of her husband's fraud – and she cannot now complain that the forum selection clause in the contract was not foreseeably applied to her.

Relatedly, Condon urged her husband to abscond to Singapore in support of her career opportunity. She demanded and supported her husband's acts of fraud and extortion and conspired and collaborated to execute those acts that she knew would inflict damage in San Francisco.

The Motion to Dismiss ignores the law of the 9th Circuit and should be denied.

Barring that, the Plaintiff would request the opportunity to amend his complaint, or if there is any uncertainty as to Condon's responsibility, to take limited discovery for the purpose of establishing jurisdiction.

Respectfully submitted,

Carl A. Wescott, *pro se*
5/3/2018

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CONDON'S MOTION TO DISMISS FOR LACK OF JURISDICTION

9

Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | | |
|---|---|---|
| Carl A. Wescott, | ) | Case No. 17-cv-06271-EMC |
| Plaintiff | ) | |
| ------------------- versus ------------------- | ) | **SWORN DECLARATION OF** |
| Eric Reisner and | ) | **PLAINTIFF CARL A. WESCOTT** |
| Kerry Condon, | ) | (EXHIBIT A) |
| Defendants | ) | |
| And DOES 1 to 20, | ) | |
| Defendants | ) | Currently scheduled hearing: May 17th, 1:30 pm |

Carl A. Wescott, first being duly sworn on oath, affirms under the penalty of perjury under the laws of the State of California:

1. I am fifty years old and if called upon to testify, I could competently and truthfully testify as follows:

2. Though I cannot find it right at the moment, Reisner and I signed a contract with a San Francisco venue/forum in the case of a dispute.

3. The contract provided advances to Reisner for his family (including Condon and their children). Those advances were against future profits, which we never achieved.

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD** 1

4. The contract provided that Reisner would get 10% of those profits and I would get 90% of them.

5. I travelled to Nicaragua to meet Defendants Reisner and Condon on several occasions.

6. During the latter visits, Defendant Condon was aggressive on the issue of contractual collections.

7. Defendant Condon was actually more aggressive than Defendant Reisner, taking the position that I would never pay the Defendant. In the course of these conversations, Condon always referenced the Plaintiff's obligations as extending to both Defendants. She complained to Reisner that the Plaintiff would never pay "us" and that Reisner and Condon should simply move to Singapore to pursue Condon's professional opportunities as a corporate recruiter.

8. Defendant Condon took the position that the Plaintiff's obligations in this case extended directly to her and in my latter visits she took the position that she and Reisner should abandon their obligations to the Plaintiff and move to Singapore.

9. Defendant Condon never deferred to Resiner. Defendant Condon in her conversations always proceeded on the assumption that the Plaintiff's obligations extended to her as well as to Reisner.

Subscribed and sworn under the Penalties of Perjury of the State of California,

Carl A. Wescott, *pro se*

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, THEFT OF TRADE SECRETS, CONVERSION, CIVIL FRAUD, PROMISSORY FRAUD AND CONCEALEMENT, BREACH OF CONTRACT,BREACH OF FIDUCIARY DUTY & PROMISSORY FRAUD** 2