Carl Wescott
PO Box 1906
San Francisco, CA 94119
*in propria persona*
+1 415 335 5000

FILED

APR 17 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISON

| | |
|---|---|
| Carl A. Wescott, Plaintiff ) | Case No. 17-cv-06271-EDL |
| ------------------- versus -------------------) | |
| Eric Reisner, Defendant ) | **PLAINTIFF'S REPLY BRIEF IN** |
| ) | **SUPPORT OF MOTION FOR** |
| ) | **DEFAULT JUDGMENT** |
| ) | |
| ) | Hearing Date:  Tuesday, April 23rd, 2019 |
| ) | Hearing Time:  9:00 am |

Plaintiff Carl A. Wescott, proceeding *pro se*, replies to Defendant Reisner's Opposition to Plaintiff's Motion for Default with this concise Memorandum of Points and Authorities.

1. <u>Introduction</u>

This case is ultimately about the abuse of a power of attorney that was used by the Defendant to sell valuable real estate - that he did not own – in a remote, foreign jurisdiction. The Defendant then absconded from the country after converting the funds from the sale.  The Plaintiff did not discover the swindle until 2016. He filed suit promptly – in any event, within the statute of limitations, after discovery of Reisner's perfidy.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Because of Mr. Reisner's pattern of failing to obey the Orders of this Court and the Rules

of this Court, the Court invited the Plaintiff to file this Default Motion. The Plaintiff complied.

The Plaintiff sincerely regrets that he has not presented this Court with a model of efficiency in

litigation.  The first time he filed his motion for default judgment, the Plaintiff did not include a

proof of service with his filing, and thus the Court assumed that Mr. Reisner had not been served.

The Plaintiff 's initial litigation experience came in Superior Court, where he represented himself

in a martial dissolution, as he was indigent and unable to hire an attorney.   The Plaintiff is used

to bringing the proof of service of certain documents to the hearing.

This is the second time the Plaintiff has filed and served his motion for default judgment

He served Mr. Reisner (via US mail) in February but lost the original proof of service and thus

filed an affidavit of service, not a technically compliant proof of service.  The Plaintiff also re-

served the motion via Priority Mail (with tracking) and has been in touch with Mr. Reisner.  Mr.

Reisner has now filed his Reply with the Court.

The Plaintiff has been slow in responding to the Court's inquiries about the Statute of

Limitations.  The Plaintiff has been late for two Court hearings.  The quality of Plaintiff's filings

is not the same as with an attorney.  But at each stage the Plaintiff has attempted, however

inartfully, to comply with the Court's Orders and instructions. Mr. Reisner has not been so

responsible nor respectful.

Mr. Reisner complains and makes excuses, and brings up the Statute of Limitations.  The

fact that litigation is stressful or inconvenient is no reason to show disrespect to a federal Court.

The Plaintiff has already addressed the Statute of Limitations in a memorandum (Exhibit A)

accompanying his Motion,

2

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Mr. Reisner's Opposition has only one salient point relevant to the motion for default judgment: "Plaintiff continues to defame Defendant and make claims without disseminating all materials facts."  In other words, Defendant disputes that he failed to participate or appear at Court-ordered settlement conferences and case management conferences; Defendant disputes that he failed to cooperate with and exchange 26.1 disclosures; Defendant disputes that he failed to respond to discovery requests; Defendant disputes that he didn't follow Court orders, and the Plaintiff is apparently defaming Defendant by stating so in his Motion for Default Judgment.

Unfortunately for the Defendant, and as the Court knows, there are many Court orders that Mr. Reisner did not follow, including for the filing of a settlement conference statement prior to the settlement conference with the Honorable Kandis A. Westmore, as well as filing a case management statement and appearing at the case management hearing.  The Plaintiff will bring further evidentiary support for these allegations to the hearing on April 23rd.[2]

Having one litigant who does not participate is not only disrespectful to the Court but makes the case difficult to manage as well.  Further, when one litigant does not participate it is not fair to the other party.  The Plaintiff drafted and served 26.1 disclosures in November 2018 (Exhibit B).  The Plaintiff has drafted and served some discovery requests (which Defendant has not responded to, either).  The Plaintiff anticipated serving a second set of discovery requests (drafted, but not served and awaiting Defendant's 26.1 disclosures and his responses to the earlier discovery requests, as some discovery builds upon prior answers).  Similarly, the Plaintiff anticipated conducting Mr. Reisner's deposition (deposition notice drafted but not yet served) based partially on the 26.1 disclosures from Defendant and his responses to the first set of discovery requests.  Our discovery cutoff date of May 16th looms, but the Plaintiff is hampered

---

[2] The Plaintiff flies to San Francisco on April 22nd to attend the hearing on April 23rd, and will visit District Court on April 22nd to pull the relevant evidence from the docket.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

by the lack of participation of Defendant. Thus, Mr. Reisner's lack of participation in this case is not only disrespectful to the Court but also fundamentally unfair to the Plaintiff who has attempted to comply with all Court orders and to move the case forward using the Court's dates as our foundation.

The Court is empowered to enter a Default Judgment in cases such as this.

Federal Rule of Civil Procedure 16 (f) states, in pertinent part:

> (f) Sanctions.
>    (1) *In General.* On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:
>        (A) fails to appear at a scheduling or other pretrial conference;
>        (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
>        (C) fails to obey a scheduling or other pretrial order.
>    Sanctions under Rule 37 (b) (2) (A) (ii) include:
>        (vi) rendering a default judgment against the disobedient party;
>    The Court, in such a case, *must* (in the language of the Rule) award sanctions and costs

unless the party can justify his noncompliance. See Rule 16(f)(2).

The Court is not only empowered to enter a Default Judgment in this case, such a course is almost compelled by the seriousness of Reisner's infractions:

> When the Court enters a case management order under Federal Rule of Civil Procedure 16, it is not spit balling ideas around a conference room table. Instead, the Court is entering dates (that, by the way, the parties had substantial input in determining) to help ensure the orderly proceeding of the matter within a very busy district court. *See* Rule 16 1983 Advisory Committee Notes ("[A]t some point both the parties and pleadings will be fixed."); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril). Cited in *McCann v. Cullinan*, No. 11 CV 50125 (W.D. Ill. 2011).

4

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Judge Johnston pointed out, in the course of the same Opinion:

> Counsel must calendar and meet dates. And if counsel is going to miss a deadline, then counsel should file a motion seeking an extension *before* the deadline has passed. *See, e.g., Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012); *Johnson v. Gudmondsson*, 35 F.3d 1104, 1111 (7th Cir. 1994); *Ammons-Lewis v. Metropolitan Water Reclamation District*, 2012 U.S. Dist. LEXIS 170976, at *4-5 (N.D. Ill. Nov. 30, 2012) (filing before expiration of deadline entitles movant to proceed under more lenient standard of Rule 6(b)(1)(A)). Counsel is far more likely to receive the extension by seeking it before the expiration. 1 *Moore's Federal Practice*, §6.06[2], p. 6-32 (Matthew Bender 3. ed. 2013). Indeed, this concept is contained in the Federal Rules of Civil Procedure. *Compare* Fed. R. Civ. P. 6(b)(1)(A) *with* Fed. R. Civ. P. 6(b)(1)(B). The old adage that it is better to beg for forgiveness than to plead for permission was rejected by the Federal Rules of Civil Procedure. *Id.; see Gray v. U.S. Steel Corp.*, 2012 U.S. Dist. LEXIS 31834, at *11-12 (N.D. Ind. Mar. 9, 2012). Failure to follow this simple solution inevitably leads to additional delay, which is a scourge of modern civil litigation. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (7th Cir. 1990). It behooves litigants, counsel and courts to remember a purpose of the Federal Rules of Civil Procedure is to seek a speedy resolution. Fed. R. Civ. P. 1.

In the case at hand, we are dealing with a pattern of disrespect from Reisner. The Defendant failed to cooperate in fashioning the parties' case management statement; simply failed to show for both case management conferences, the settlement conference, failed to provide a 26.1 statement, and failed to respond to discovery. The Court expressed exasperation in open Court with this pattern of malign neglect, and the Plaintiff has shown (above) how the Defendant's lack of participation is not only disrespectful to the Court but also unfair to Plaintiff.

The Plaintiff wrote his initial Motion for Default Judgment pursuant to Federal Rules of Civil Procedure 16(f)(1); Federal Rule of Civil Procedure 55 and 28 USC 1927 4.2. The Plaintiff had moved for a Default Judgment against Defendant Eric Reisner for failing to follow Court orders and participate in the Court process, including not appearing at successive conferences.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

This pattern of abdicating his responsibilities before this Court subjects Reisner to a Default

Judgment under Federal Rule of Civil Procedure 16(f)(A) through (C) for persistently failing to

appear and/or cooperate in the case management and case scheduling process. The Plaintiff

respectfully requests that the Court issue an order granting the Plaintiff a Default Judgment under

FRCP Rule 55(b). The Plaintiff further respectfully requests that the Court order the Defendant

to pay Court costs thus far and sanctions to the Plaintiff, pursuant to Rule 16(f)(2). Finally, the

Plaintiff respectfully requests that the Court allow Plaintiff to submit evidence in writing for a

future Prove-up hearing where Plaintiff will prove the amount of the damages caused by Mr.

Reisner's breaches, supported by the evidence.


RESPECTFULLY SUBMITTED


Carl A. Wescott, *pro se*
April 15th, 2019


**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Carl Wescott
PO Box 1906
San Francisco, CA 94119
*in propria persona*
+1 415 335 5000

*EXHIBIT A*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISON

| | |
|---|---|
| Carl A. Wescott, Plaintiff | ) Case No. 17-cv-06271-EDL |
| ------------------ versus ------------------ | ) **PLAINTIFF'S MEMORANDUM IN** |
| Eric Reisner and | ) **SUPPORT OF DEFAULT, SPECIFICALLY** |
| DOES 1 to 20 | ) **ADDRESSING THE STATUTE OF** |
| Defendants | ) **LIMITATIONS** |
| | ) Hearing Date:  Tuesday, April 23rd, 2019 |
| , | ) Hearing Time:  9:00 am |

Plaintiff Carl A. Wescott, proceeding *pro se*, submits, at the Court's request, this concise

Memorandum of Points & Authorities directed at the Statute of Limitations as it applies to his

claims against Defendant Reisner.

1.   Introduction

The Defendant in this case has consistently refused to participate meaningfully or

constructively in the litigation process. As a result, the Court invited the Plaintiff to file a Default

Motion. The Plaintiff accepted the Court's invitation and filed a Motion for Default Judgment,

but at the hearing last month, the Court asked the Plaintiff to provide further guidance as to why

the Statute of Limitations did not apply to bar his claims. The Plaintiff apologizes for the delay in

responding to the Court's question but he hopes to address this issue dispositively with this

Memorandum of Points & Authorities.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF DEFAULT**
**SPECIFICALLY ADDRESSING THE STATUTE OF LIMITATIONS**

1

2. <u>The Plaintiff Did Not Discover His Injury Until After the Statute of Limitations Would Have Run</u>

Reisner sold valuable real estate in Nicaragua that was not his to sell at a fire sale price in the year 2010. The statute of limitations for fraud in California is ordinarily three years from the time the fraud was discovered or should have been discovered. *Fox v. Ethicon-Endo-Surgery, Inc.* (2005) 35 Cal.4th 797. However, California applies the delayed discovery rule CCP 338 (d). This provides that the statute runs three years from the time the aggrieved party discovered, or should have discovered fraud. *Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1430. Delayed accrual does *not* apply if the fraud was discovered within the statute of limitations. *Knapp v. Knapp*, 15 Cal.2d 237, 242, 100 P.2d 759 (1940).

The Complaint in this case is rather detailed on this point. Reisner absconded from Nicaragua with his wife in 2010 but returned later that year to sell the relevant property without permission or authority (Complaint, paragraphs 24-26). The Plaintiff experienced a series of reverses which culminated in an interlude of homelessness. He traveled to Nicaragua in 2016 and 2017 – three and four years after the statute of limitations would have elapsed had he been in a position to discover Reisner's fraud earlier. He searched for Reisner. Initial efforts were unavailing, but he was able to locate his former real estate broker, Carlos Gutierrez Solis. The Plaintiff learned of the fraudulent sale from Senor Gutierrez Solis. He discovered that Reisner had sold the full property, which had since been subdivided in to 42 lots that could have had a value of $30,000 or more apiece if sold individually after adding septic systems and drainage to the road; $1,260,000 being material to the budget of a Plaintiff battling homelessness. The Plaintiff then subsequently was able to locate Mr. Reisner, who had since moved back to the United States. The Plaintiff sued within a year after discovering the fraud.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF DEFAULT SPECIFICALLY ADDRESSING THE STATUTE OF LIMITATIONS**

To this, the lethargic Defendant might reply that the Plaintiff "should have" discovered the fraud sooner. This is counter-intuitive at best. The Plaintiff was *shocked* that Reisner committed criminal acts in selling the lots and converting the proceeds. He knew Reisner had a temper. He knew Reisner had a rather expansive definition of reimbursable expenses. Such flaws in a business partner are within the predictable range of ordinary friction, especially in what was then a worsening real estate market. However, the Plaintiff could not have known or even reasonably suspected that Reisner was an out and out thief. He was not in a position to travel to Nicaragua before 2016 as he was fighting for his very survival. International business travel is a rare treat for the homeless entrepreneur. The case law requires *reasonable* diligence, not superhuman exertion. What is reasonable will depend, to a degree, on the circumstances applicable to the Plaintiff that were, quite frankly, desperate.

Reisner had no authority to sell the lots in question. The Plaintiff is not required to anticipate criminal acts.

### 3. Conclusion

The Plaintiff has pled sufficient facts to show that the delayed accrual rule applies to the Statute of Limitations in this case. He has shown that he did not learn of the central fraud until after the Limitations period would have lapsed and that it would not have been reasonable to expect him to suspect that his business partner was a criminal. The real estate in question was located in a remote location, which the Plaintiff finally accessed. When he found out the true facts, he acted promptly and decisively.

The Plaintiff respectfully urges this Court to grant him a Default, in part because the Statute of Limitations is not a colorable defense in this case.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF DEFAULT
SPECIFICALLY ADDRESSING THE STATUTE OF LIMITATIONS**

3

Respectfully submitted,

Carl A. Wescott, *pro se*
February 23rd, 2019

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF DEFAULT**
**SPECIFICALLY ADDRESSING THE STATUTE OF LIMITATIONS**

Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

Carl Alexander Wescott,                    )    Case No. 17-cv-06271-EMC

                Plaintiff         )

------------------- versus ------------------- )    **PLAINTIFF'S 26.1 DISCLOSURE**

                              )

Eric Reisner                               )

                Defendants     )

      And DOES 1 to 20,              )

                Defendants     )

      Pursuant to Federal Rules of Civil Procedure 26 (a) (1) and Standing Order of this Court,

Plaintiff Carl A.Wescott, proceeding pro se, provides the following 26.1 disclosures.

1. <u>Factual Basis for Case</u>

      This case is about fiduciary breach, embezzlement, fraud and the misappropriation of trade

secrets arising out of a contract to develop property in Nicaragua. The Plaintiff trusted Defendant

Reisner ("Reisner") with substantial funds including the purchase of property with those funds

and legal control/power of attorney over that property. Reisner misused the latter to fraudulently

sell valuable real property at fire sale prices and convert the funds. Reisner left the country and

**PLAINTIFF'S 26.1 DISCLOSURE**                                    1

absconded to Singapore with the proceeds of his theft and has only been recently located by the Plaintiff. Conjunctively, the Plaintiff entrusted Reisner with valuable trade secrets related to the valuation, value optimization, venue selection, marketing, and financing of international real estate. Reisner misappropriated the Plaintiff's trade secrets.

2. <u>Witnesses Expected to Testify at Trial [26 (A) (i)]</u>

a.) The Plaintiff Carl Wescott is expected to testify as to the parties' negotiations and the execution of the contract at issue; the value of his trade secrets; his disclosures in confidence to Reisner; his original purchase of the property for over $200,000, his payments to Reisner; Reisner's failure to obtain financing or permits as per the parties' agreement and its impact on the project and Wescott's cash flows; his meetings with Reisner; Reisner's insistence on obtaining signatory authority which was supposed to be upon written confirmation by email from Plaintiff; Reisner's misuse of that authority to sell the assets at fire-sale prices; the disappearance of Reisner & Condon; and Wescott's damages.   After discovery is conducted the Plaintiff expects to also tesify as to the subsequent misuse by Reisner of Wescott's trade secrets.

b.) Defendant Reisner is expected to testify as to the negotiation and execution of the contract; his failure to perform as warranted (e.g. obtain permits or financing); his demand for signatory authority and misuse of that authority; his unauthorized sale of the properties and conversion of the proceeds; his flight; and (upon information and belief) his subsequent misuse of the Plaintiff's trade secrets.

**PLAINTIFF'S 26.1 DISCLOSURE**

2

c.) The Defendant's ex-wife Kerrie Condon may testify by deposition and upon subpoena on substantially the same issues as Defendant Reisner, with an added emphasis on her acts of exhortation and encouragement in relation to Reisner's acts of breach and abandonment.

d.) Defendent Reisner testified in front of Judge Edward M. Chen that it wasn't his idea to sell the property, but that Carlos Gutierrez and Paul Tiffer insisted to Reisner that he had to sell the property. Carlos Gutierrez Solis and Paul Tiffer are expected to testify that they did no such thing. (Reisner would still have liability even if they had, but the credibility of the Defendant is at issue).

e.) The Plaintiff will engage a valuation expert to show the value of the properties at issue and the Plaintiff's lost profits resulting from the Defendants' breaches and defalcations. The Plaintiff may engage a separate expert, if necessary, to establish a reasonable royalty for the Defendants' misuse of his trade secrets. The Plaintiff will disclose the identity and testimony of his expert testimony within the time frame set by Federal Rule of Civil Procedure 26 (D).

3.   Documents on which Plaintiff Intends to Rely [26 (A) (ii)]

The Plaintiff will seek relevant documents possessed by the Defendant through appropriate discovery. At this time, the Plaintiff bases his case on:

(a) Contemporaneous email correspondence between the parties;

(b) The parties' written contract;

(c) Phone records and records of text messages where retrievable;

(d) Books and records of the account kept by the Defendant relating to the project;

**PLAINTIFF'S 26.1 DISCLOSURE**

(e) The Plaintiff's records of payments made to the Defendant;

(f) Related bank records and;

(g) Property transfer records and legal records relating to the project.

The Plaintiff possesses computer archives relating to categories (a) and (b) although he is still in the process of electronic retrieval having recently upgraded his IT capabilities by borrowing a laptop from a friend; the Plaintiff believes he can obtain control of the records described in categories (c) through (f) by making requests of agents and/or custodians or utilizing the subpoena powers of the Court, or, indeed, serving proper discovery on the Defendant. The Plaintiff can make the documents in his possession available to the Defendant at a mutually convenient time as they are retrieved and/or become available.

4.  <u>Plaintiff's Computation of Damages [26 (A) (iii0]</u>

The Plaintiff will engage a valuation expert to show the value of the properties at issue and the Plaintiff's lost profits resulting from the Defendants' breaches and defalcations. The Plaintiff may engage a separate expert, if necessary, to establish a reasonable royalty for the Defendants' misuse of his trade secrets.

At this time, the Plaintiff is in a position to disclose, pre-expert report:

(a) The properties at issue were very valuable and the Defendant disposed of them at "fire sale" prices;

(b) The properties would have been even more valuable had the Defendant taken the contractually proper steps to develop and market same;

**PLAINTIFF'S 26.1 DISCLOSURE**

4

(c) The Defendant converted certain project revenues improperly charged the Plaintiff for extra-contractual expenses;

(d) The Defendant misused the Plaintiff's trade secrets in such a way as to become liable for a reasonable royalty payment to the Plaintiff;

The Plaintiff estimates that his recoverable damages for the sale of the property and conversion will be in the range of $500,000.00 as of about seven years ago, which would make the damages approximately $1,000,000 in 2018 or $1.1 million in 2019 with interest.

5.  Insuring Agreements [26 (A) (iv)]

The Plaintiff is not aware that the Defendant has claimed that he is not liable and the Plaintiff is aware of no insurance coverage he possesses that may be applicable to this case. The Plaintiff will ascertain whether the Defendant carried personal lines or business lines coverages that might be applicable.

RESPECTFULLY SUBMITTED.

_____        (re-signed 4/15/2019)

Carl A. Wescott, *pro se*

November 16th, 2019

**PLAINTIFF'S 26.1 DISCLOSURE**